Thank you, your honors. Good morning. I'm Knute Johnson. I represent defendant appellant Marc Vogel, as well as Weyland Moore. Your honors, there's the central issue to this appeal really is the defense instruction, proposed mistake of fact instruction that the court altered and took out of it, even though calling it a mistake of fact instruction. It was no longer a mistake of fact instruction. The instruction given by the court instructed the jurors that it simply is the government's burden to prove beyond a reasonable doubt that Mr. Vogel had the requisite knowledge and intent. The instructions given for each offense, as the court knows on environmental crimes cases, really has very limited intent requirement. And so the jury could convict him and, in fact, did convict him simply because the disposal site did not possess a permit to handle the waste. That's count three. The same for every count. Count two, the substance was transported without a manifest. And count one, the substance was transported to a facility without a permit. His defense, which the Supreme Court in International Chemicals and Minerals stated very clearly, and other circuits have found it, you can have a mistake of fact, you can be mistaken about the facts. And in other cases, it's the convenience store owner who thought he was disposing of water when it turned out, in fact, to be gasoline. And there was, in Hayes International, he thought everything was going to a recycler when, in fact, the hauler took it not to a recycler. This Court has found that mistake-of-fact defenses can and do provide a complete defense to the charges in certain cases, and this was one of those. Mr. Vogel thought the waste hauler was going to haul the waste to, in a manner, to a place that was permitted under the law. It was the waste hauler who was really part of the regulated community. But didn't you essentially get the mistake-of-fact instruction that you were asking? I thought the actual one that was given, it seems to me, really covers the ground and restates that it's the government's burden to prove beyond a reasonable doubt that the defendants had the knowledge or intent required to commit the subject offenses, and that reasonable doubt could arise out of a mistake-of-fact. Didn't you get really what you wanted? No, we did not, because it doesn't explain what the mistake-of-fact could be about, which is what we wanted and what we needed. But you were raising the mistake-of-fact in the defense throughout the trial. Right. The jury knew it. Right, which is why we wanted this specific instruction that says, it is a defense, if you were mistaken, about how the hauler is going to handle it. That's not the exact quote, but that is… The defendants have raised as a defense that they were factually mistaken about whether American Haulaway and its driver had the required manifest for hauling and disposing of the subject chemicals, and two, whether American Haulaway and its driver would transport the subject chemicals to a properly permitted facility, and then it goes on to the proof beyond a reasonable doubt. Right, which is the critical language that was changed, is the part where Your Honor just stopped, which is that it is the government's burden to prove beyond a reasonable doubt the knowledge or intent. That is, in the instructions is, for instance, count one, there is no knowledge or intent required about whether the facility had a permit or not. Count number two, there is no knowledge or intent required regarding whether it was transported without a manifest. Count number three, there is no knowledge or intent required that the disposal site did not possess a permit to handle the waste. Well, because knowledge or intent under those instructions is not relevant, the jurors could not have heard that and read that and believe that, well, under the facts of this case where Mr. Vogel testified and said, I didn't know. I wouldn't have hired these guys if I thought they were going to do it illegally. I hired them because I wanted it handled correctly. And not incidentally, the trial judge gave under – when he sentenced Mr. Vogel, gave him acceptance of responsibility. Clearly, the trial judge believed that testimony. Well, if you believe that testimony under – Justice, responsibility doesn't mean that. Well, no. It is more complicated than that. But if the judge thought he was lying about that, I don't think he would have given him acceptance of responsibility. And more importantly, the jurors under this instruction, even if they believed that, would have had to convict. Because there is nothing in the instructions given that says that it is a defense, even though it is not an element that you have any knowledge about whether the disposal site had a permit or whether there was a manifest. There's no knowledge. But if you were mistaken that it was going to be handled properly, just like the convenience store owner who thought – I thought they were dumping water, not gasoline. And just like the other case, the Hayes International, where they thought they were hiring someone to take everything to a recycling bin, which is probably the closer case. If it had been taken to a proper recycling facility, that was a complete defense, and the jury should have been told that. And that they would be not guilty. Because if you were mistaken about a fact, whether it's – yeah, it goes to knowledge or not, you are not guilty under the law. And this Court, in the Peterson case, that's the embezzlement and theft case, where the person was purchasing items and he was convicted of embezzlement and theft. He thought that the person selling to him had the legal authority to do that. Well, the jury should have been told that. That that's a defense. If you thought that was right, even though that's not an element of defense, you're not guilty. And the same as to the 1324 cases. And those, of course, are cases, transportation of illegal aliens. And that in those cases where I thought they were legal is a mistake of fact. And the defense has to be instructed on that. Just like in this case, Mr. Vogel thought American Holloway, who advertised to haul trash, whatever you have, and who said, we'll look at it. If we can't haul it, we'll let you know. And who on site was shown the segregated items. Mr. Vogel showed them, here is the pile of recycles, the electronics. Here are the bottles with the chemicals. Here is the construction waste, you know, the wood, the wall materials, and the traditional things you see when a building or something is being remodeled. He separated them out because he wasn't sure. And so relying on the hauling company, who should know, who said they could, and then took it away, he was then convicted. And under those facts, and under the law, as the Supreme Court set out in International Chemicals, and under the law of this circuit, that kind of mistake of fact is a complete defense. And the court, when it took that language out of the proposed instruction and just said, it's the government's burden to prove beyond a reasonable doubt. What's the language that was taken out that you should say should have been there? The exact language, it's going to take me a minute to shuffle my papers and get it, was that the defense, the defendant thought that the material was going to be handled lawfully or legally. You mean, well. If I have one moment. I lined up all the instructions to read here on it, but that one, I'm sorry. The only one that makes a difference? Pardon? Go ahead. I think Ms. Pearson was about to let us know. I think I can help. The language that you wanted but didn't get was a sentence that you had at the end of the second of the two, first of the two paragraphs, but I need to read the entire paragraph to make sense. The paragraph reads, The defendants have raised as a defense that they were mistaken about, one, whether American Holloway and the driver acting on behalf of American Holloway would use the proper paperwork to haul and dispose of the chemicals at issue, and two, whether American Holloway and the driver intended to properly haul and dispose of the chemicals. You basically got that. Right. But you also wanted a sentence that said, In either case, the defense did not have the mental state element of the defense as charged required to be guilty. That's the sentence that you wanted and didn't get. That is. I think it's logically more important, but let me say something about that first sentence, too, that's very important. And that is that this is, Justice Stewart raised this in his dissent in International Chemicals, where he said the problem is that the non-regulated members of the community, the innocent, the people who are relying on others, in essence, when you take away the intent. The instruction that's given said that he was mistaken whether American Holloway had the required manifest and whether American Holloway would transport the subject chemicals to a permitted facility. The problem is, as a member of the non-regulated community, he wouldn't know that language. He couldn't testify and say, I thought they had a manifest. He didn't even know what a manifest was. Now, that's not as important, but I think that that is an important distinction in the changes made because it goes to really all the issues in this case. And then the Court, I believe, completely gutted it logically by saying that the government's got to prove knowledge and intent, but there is no knowledge or intent on the essential elements of the mistake of fact defense, which is whether the facility is permitted and whether they had a manifest, which in Mr. Vogel's mind would be whether they could do it properly. Got it. Thank you, Your Honor. Okay. Let's hear from the other side, and, of course, you will have a chance to respond. Well, yes, thank you. I could rattle on and on, but I think I'll get there. Let's hear from the government. Let's hear from the government. May it please the Court. Assistant U.S. Attorney Melanie Pearson on behalf of the United States in this matter. Actually, in fact, the jury was instructed that the government did have to prove both that the defendant knew that there was a manifest present and that he was aware that the disposal site didn't have a permit. If you look at my selected excerpts of the record, I included all of the jury instructions, and on page 215, it recites the elements of the unlawful transportation of hazardous waste, and the fourth element is that the defendant knew that the substance was a waste that posed a substantial hazard to human health and environment when improperly managed, and that the substance was transported to a facility not permitted to handle such waste. And when you look at page 217, the Court's instructions on the elements of the offense for transportation of hazardous waste without a manifest, element number 4, the government had to prove that, again, the defendant knew the substance was a waste that posed a substantial hazard and that there was no manifest accompanying the waste. So given those instructions taken in their totality with the instruction, the mistake of fact instruction, the jury was instructed that the government had to prove that he knew that there was a manifest or not, and we had to prove that he knew that the waste disposal site did not have a permit. And the jury, by its verdict, found both that he knew that there wasn't a manifest and that he knew that the disposal site was not permitted. And therefore, I believe that the defendant got the theory of defense that he was in instruction that he was entitled to under the law. As we know, under Lopez-Alvarez, he's not entitled to any particular form of the instruction and mistake of fact is a defense. And in this case, he was allowed to fully argue it and did fully argue it to the jury. And you can see in his excerpts of the record at pages 300, 302, and 304 that, in fact, he did fully argue this to the jury. Kennedy. Let me ask you a different question that, in a sense, is not strictly relevant to the legal question in front of me, in front of us, and that is, what's the practice of the U.S. Attorney's Office with these environmental and toxic waste cases on the sort of spectrum of really bad guys to only kind of bad guys? We're talking only about a kind of bad guy. And even within the context of this case, if there's a really bad guy and a not really bad guy, the really bad guy is the guy who's actually disposing of it improperly. How aggressive is the office generally in going after the people who are maybe willfully blind to where this stuff is going when they ask somebody to pick it up? I mean, I'm trying to get a sense of the context here. I think that the facts of this case actually show that he wasn't willfully blind, that he knew exactly what was going on. He had hired this company twice before to haul stuff away from his house, including paints, which he wasn't sure whether it was a paint that was regulated or not. He couldn't remember whether there was wet paint or dry paint before. But when he brought them in, what happened, what he saw was that, you know, the man on the phone said, I don't know if we can take your stuff, even if we believe everything that he said, the best thing he got out of the guy on the phone was, I don't know, my driver will look at it and he'll tell you. Well, then the driver and his companion come in, and they're dressed in old jeans. There's no uniforms. There's no protective clothing. They've got an old, dirty truck. And the gentleman speaks mostly Spanish, some English. They converse in both English and Spanish. And then he watches them carry the stuff out. And they toss it in the back of this old, dirty truck, and they don't make any effort to segregate his little piles of waste that he said. They toss the chemicals in exactly with the other waste and, you know, drive out. And the only paperwork that they exchange is when he gives them $100 cash to haul it away, the gentleman writes out a little receipt for the $100 cash and writes junk on it and gives that to the defendant. And the defendant was aware that these are the circumstances that I'm disposing this. And he also testified that he was aware that this stuff had to be handled different than the ordinary trash. And it's a man who has owned his business as a pawn shop, worked there since 1974 while he was still in high school, owned it since 1987, owned it during the period that these chemicals were purchased, and, you know, was present on a daily basis in his business watching these chemicals be utilized in the manufacture of jewelry. This is a gentleman who purchased these chemicals, paid for them, and was in the best position of anyone to know what was going on with these chemicals. I should have included a picture of the chemicals because it's actually quite instructive. When we all go to Costco and we buy those big plastic containers of, like, pretzels and they come in a big jar like that, well, it was a big jar size like that, two of them, full of cyanide powder. And what you didn't hear, because this was really a sentencing issue and not a conviction issue, but what the evidence was presented at sentencing was that he disposed of the cyanide together with a gallon container of nitric acid. And those two things, thrown in a jumble, were sent in the back of this man's truck. If they had, in the container of nitric acid was glass, if they had broken and combined it would have created a deadly hydrogen cyanide gas that in three seconds anyone within 100 yards would be dead. And I presented that evidence to the court at sentencing. That's not something the jury should hear. But that's why this is a bad actor. Okay. Got it. Unless you have any other comments, I'd submit. Okay. Thank you. Response? First, as to the court's question about who was prosecuted, American Holloway, the company, was not prosecuted. Clearly their driver was acting as an agent of American Holloway. The company and the driver had prior instances of illegally dumping waste at the same dump. Certainly Mr. Vogel had no knowledge whatsoever of that. What should we take from the fact that the Holloway was not indicted, American Holloway was not prosecuted? Well, that doesn't really go to the instructional issue, but it goes to previous issues which go to the evidence presented and the way that the government argued the case, that the evidence that the defense was not allowed to present, including the prior felony conviction of the driver under the California Health and Safety Code for a narcotics violation, the fact that he at all this time was an illegal alien, and in fact- How does that help your client? I'm sorry. How does that help your client? Well, because under our theory of the case is that this company tricked him, in essence, into giving them $100 thinking they would do it right. And would they be more likely to do it if they'd done it in the past? And we rarely prove that they'd done it in the past. But that there was an illegal alien driving this, and the owner of the company claimed that, Yeah, I'm sure I couldn't find it, but we had some paperwork on file somewhere saying that he was allowed to work in this company. That's all relevant to that. And all that circles around the core issue in this case, which was that the jurors could convict, despite believing Mr. Vogel's testimony, that these people tricked him, that he believed, that he was fooled, because the court modified the defense of mistake-of-fact defense. Thank you. Okay. Thank you very much. Thank you. Thank both sides for your arguments. United States v. Vogel is now submitted for decision, and that completes our argument calendar for this morning. All rise. Thank you.
judges: Stein, Trott, Fletcher